UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------- x
UNITED STATES OF AMERICA,           :
                                    :
       - against -                  :       16-CR-167(LAP)
                                    :
JUSTIN RODRIGUEZ,                   :
                                    :
                 Defendant.         :
-----------------------------------x

LORETTA A. PRESKA, SENIOR UNITED STATES DISTRICT JUDGE:

Before the Court is Defendant Justin Rodriguez's letter motion, dated April 5, 2020, which requests release pursuant 18 U.S.C. § 3582(c)(1)(A) in light of the COVID-19 pandemic (the "Motion") (Dkt. no. 329). For the reasons described below, the Defendant's request is denied.

I.  **Background**

   **A. Prosecution, Sentence, Recent COVID-19 Motion**

On or about July 25, 2016, the Defendant was charged in a 12-person superseding indictment for participating in a drug-trafficking organization that operated in and around the New York City area.  The Defendant was charged in two counts: conspiracy to distribute and to possess with the intent to distribute 5 kilograms and more of cocaine, 280 grams and more of crack cocaine,  a detectable quantity of heroin, and marijuana, in violation of Title 21, United States Code, Sections 841(b)(1)(A), (C), (D), and 846 (Count One); and,

firearms trafficking, in violation of Title 18, United States Code, Section 922(a)(1)(A) (Count Two). (Dkt. no. 47.)

The investigation revealed that beginning at least in or about 2015 through in or about 2016, the Defendant was a mid-level dealer of cocaine in the New York City area. (Presentence Investigation Report, dated September 14, 2017 ("PSR") ¶¶ 16, 23.) The Defendant also sold marijuana and prescription pills. (PSR ¶ 23.) In order to collect outstanding drug debts, the Defendant also made a credible threat of violence. (PSR ¶ 23.) This threat, although not acted on, was not hollow. The investigation revealed that during the conspiracy, the Defendant possessed firearms, and arranged the sale of at least one firearm. (PSR ¶¶ 21, 23.) During a thirty-day wiretap of the Defendant's phone, shortly after this gun sale the Defendant was intercepted discussing his prior possession of a firearm and other potential sales of firearms. (PSR ¶ 23.) In particular, on November 1, 2015, he was intercepted discussing that he was about to purchase another gun ("I'm about to cop another toasty") and that he was going to pay $350 for it, but that 2 he had a purchaser lined up to buy it for $800 ("the one right now I'm about to pay, about to pay I'm about to pay three fifty. But somebody want to buy it for 800."). Despite that he thought it was an easy way to make money "real quick," the Defendant acknowledged how dangerous selling guns was: "I make a little couple of dollars real quick. But I don't like selling niggas

the hammer times, you feel me? Cause if a nigga tries to fuck me, I'm have to clip that nigga, you heard?"

On June 21, 2017, the Defendant pled guilty to a lesser-included offense of Count One of Indictment S1 16 Cr. 167 (LAP), and admitted to participating in a conspiracy to distribute cocaine, in violation of 21 U.S.C. § 841(b)(1)(C) and 846. (PSR ¶ 6.) Pursuant to a plea agreement, the Defendant admitted he was responsible for distributing at least 500 grams but less than 2 kilograms of cocaine; that he was responsible for possessing a firearm in furtherance of the narcotics conspiracy; and, that he used violence or made a credible threat of violence in connection with the offense. (Id.; see also PSR ¶¶ 38-40.) This resulted in a total offense level of 25, which the Court recognized "accurately reflects the nature and circumstances of the offense." (Sent. Tr. 10; see also PSR ¶ 48.)

The Defendant had one prior adult criminal conviction for harassment, which arose from a dispute with his ex-girlfriend where he struck her across the face with a closed fist and then displayed a knife causing her to fear for her safety. (PSR ¶¶ 50-51.) Because that conviction led to a conditional discharge and an order of protection, the Defendant had one criminal history point, and was in Criminal History Category I. (PSR ¶¶ 50, 52.) Although the Court recognized that he was in the lowest criminal history category, the Court noted his criminal conduct was "very, very serious behavior." (Sent. Tr. 11.)

On September 29, 2017, the Court imposed a Guidelines sentence of 57 months' imprisonment, (Dkt. no. 179; PSR ¶ 84; Sent. Tr. 12.) The Court explained that the Defendant's conduct was "exceeding serious," because of the "incredible danger" posed by the Defendant's activity, i.e., "this Defendant possessed a loaded firearm, threatened violence in connection with drug dealing, and sold firearms to other members of the community." (Sent. Tr. 10-11.)

The Defendant is currently housed at the Metropolitan Detention Center Brooklyn ("MDC"), and his term of incarceration is set to expire on June 9, 2020. During his time in BOP custody, the Defendant has been disciplined on multiple occasions. In particular, on December 1, 2016, while on pretrial detention, he was sanctioned for interfering with staff, resulting in disciplinary segregation for 45 days, impoundment of property for 120 days, losing mp3 player and commissary privileges for 180 days. His infractions continued after he was sentenced. On August 30, 2018, he admitted to a charge of "possessing drug/alcohol," resulting in disciplinary segregation for 30 days, and losing visiting privileges for 6 months, followed by an additional 6 months of restricted visits without contact. On November 13, 2019, he admitted insolence towards a staff member, resulting in loss of commissary privileges for 90 days. And most recently, on January 12, 2020, after he was transferred to a Residential Reentry Center

4

("RRC"), he was sanctioned for use of drugs/alcohol, arising from a positive laboratory test for synthetic cannabinoid. As a result, on January 24, 2020, he was transferred to the MDC as a RRC "failure" for this incident. (See Dkt. no. 329-2.)

On March 27, 2020, Donald duBoulay, Esq., on the Defendant's behalf, filed a request to the Warden of MDC Brooklyn, under 18 U.S.C. § 3624(c), for release to home confinement, in order to stay with his mother in Staten Island. (Dkt. no. 329-1, at 1.) Mr. duBoulay also argued that release was appropriate because the Defendant was "high risk" as a result of a "lifelong asthma condition." (Id. at 2.)

On April 3, 2020, MDC's Warden denied the Defendant's request, explaining (1) that the Defendant was not eligible to be considered for home confinement, pursuant to 18 U.S.C. § 3624, because he "is a holdover inmate" as a result of being returned to the MDC from the RRC for use of drugs/alcohol (Dkt. no. 329-2 (citing BOP Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedure)); and (2) that to the extent the Defendant was seeking consideration of reduction in sentence for compassionate release, pursuant to 18 U.S.C. § 3582, it was not warranted as this time because "based on [the Defendant's] medical condition, his medical records do not identify any significant changes to his current medical condition that reflects a terminal or debilitated medical condition" (Dkt. no. 329-2).

On April 5, 2020, the Defendant filed the instant Motion, for compassionate release under 18 U.S.C. § 3582(c)(1)(A), or, in the alternative, home confinement. The Motion does *not* indicate that the Defendant has sought to appeal the Warden's decision through the Administrative Remedy Procedure. See 28 CFR § 571.63 (a) ("When an inmate's request is denied by the Warden, the inmate will receive written notice and a statement of reasons for the denial. The inmate may appeal the denial through the Administrative Remedy Procedure (28 CFR part 542, subpart B).").

**B. Rodriguez, the BOP, and COVID-19**

Justin Rodriguez is 26 years old. (PSR ¶ 55.) At the time the PSR was prepared "the Defendant reported no health issues" (PSR ¶ 65) and that he "smoked marijuana weekly" from the age of 16 until "the date of his arrest for the instant offense" (PSR ¶ 72). According to BOP medical records he has a history of asthma from childhood, which is induced by heavy exercise (which he partakes in) and which is reportedly well controlled, and he has a history of daily use of smoking marijuana. He has been prescribed an albuterol inhaler by the BOP for use as needed. Apart from not inhibiting him from inhaling controlled substances, his asthma does not appear to prevent him from participating in vigorous activities. He had been a competitive handball player before the instant offense (PSR ¶ 77). And at the MDC he has continued to play sports. About a month after he

6

arrived at the MDC, for example, on February 27, 2020, he was treated for minor injuries resulting from "playing basketball," when he "went up to dunk the ball."

The Defendant has offered no evidence to suggest the MDC and the BOP more broadly are not taking seriously the pandemic or his own personal medical history. To the contrary, as set out in the Government's papers, the BOP has made significant efforts to respond, and these measures have provided quite successful so far. As of April 7, the MDC – where Rodriguez is housed – reported a total two inmates who tested positive for COVID-19.[1] The MDC houses 1,734 total inmates. See BOP website for MDC Brooklyn.[2] That means that approximately 0.12% of MDC inmates have been confirmed to have COVID-19. By way of contrast, New York City had an estimated population of 8,398,748 as of July 2018. See U.S. Census Population Forecast.[3] As of today 76,876 cases of COVID-19 had been diagnosed in New York City. See New York Times, Coronavirus in the U.S., Latest Map and Case Count.[4] That means that 0.91% of the New York City population has been diagnosed with COVID-19.

---

[1] Available at https://www.bop.gov/coronavirus/index.jsp last viewed on April 7, 2020, at 9:17 p.m.
[2] Available at https://www.bop.gov/locations/institutions/bro/.
[3] Available at https://www.census.gov/quickfacts/newyorkcitynewyork.
[4] Available at https://www.nytimes.com/interactive/2020/us/new-york-coronaviruscases.html#county; last viewed on April 7, 2020, at 9:24 p.m.

All of these steps belie any suggestion that the BOP is failing meaningfully to address the risks posed by COVID-19 or take seriously the threat the pandemic poses to current inmates. To the contrary, it shows that the BOP has taken the threat very seriously, and has mitigated it to an extraordinary degree.

**II. Analysis**

**A. Applicable Law**

Under Section 3582, the Court only "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." See 18 U.S.C. § 3582(c)(1)(A); see also 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13. That section provides that the Court may reduce the term of imprisonment if "extraordinary and compelling reasons warrant the reduction," id. § 1B1.13(1)(A); "the Defendant is not a danger to the safety of any other person

8

or to the community, as provided in 18 U.S.C. § 3142(g)," id. § 1B1.13(2); and "the reduction is consistent with this policy statement," id. § 1B1.13(3).

The Application Notes describe the circumstances under which "extraordinary and compelling reasons exist." Id. § 1B1.13 Application Note 1. Application Note 1 provides in As the proponent of the motion, the Defendant bears the burden of proving that "extraordinary and compelling reasons" exist. See, e.g., United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); United States v. Clarke, No. 09 Cr, 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) ("If the Defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (quoting Butler, 970 F.2d at 1026)); cf. United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013).

### B. Discussion

The Court assumes without deciding that it has the power to waive the requirement of exhaustion of administrative remedies. Rodriguez has not set forth a basis to believe that there are extraordinary and compelling reasons for him to be released early. All he has done is to note that he has asthma, he is in prison, and there is a COVID-19 outbreak nationwide. That is not enough. Rodriguez has proffered nothing to indicate that he

falls into the narrow band of inmates who are "suffering from a serious physical or medical condition," "that substantially diminishes the ability of the Defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." See U.S.S.G. § 1B1.13, application note 1(A). Rodriguez has said nothing about how his asthma or any other condition has proved a problem lately (and his recent use of drugs and vigorous activity suggest they have not), and he has not provided anything more than conjecture about how MDC has failed to address the COVID-19 crisis appropriately,[5] much less how such a combination renders him uniquely vulnerable that this Court should reduce his sentence.

In addition, to the extent Defendant wishes to pursue his request for home confinement, that request is denied. The Bureau of Prisons, not the Court, has the sole authority to prescribe home confinement post-incarceration. 18 U.S.C. § 3624(c). The BOP, with its professional medical staff and its systemic measures to address the spread of COVID-19, is well situated to make a determination as to whether Rodriguez should be eligible for home confinement, consistent with the Attorney General's Memorandum for Prioritization of Home Confinement As

---

[5] The defendant's assertion, for instance, that the COVID-19 will spread throughout the MDC because of an inmate who was brought to the MDC from Rikers, who later tested positive on March 21, 2020, is unsupported by a medical opinion and belied by the fact that more than three weeks later, as a result of the MDC's strict adherence to safety measures, there are only two inmates who have tested positive.

10

Appropriate in Response to COVID-19 Pandemic (March 26, 2020), or could otherwise be accommodated at the facility. This is especially so because the BOP staff at the MDC are uniquely situated to understand the circumstances in the facility; the risk to Rodriguez; and whether, if other defendants who are deemed at high risk of COVID-19 and who would qualify under other release programs are released to home confinement, there is a way to accommodate Rodriguez at the MDC in a safe manner. They have done so, and Rodriguez offers no compelling response that meets his burden of proving that he is entitled to relief under 18 U.S.C. § 3582. See Butler, 970 F.2d at 1026.

Furthermore, Rodriguez has also not explained how he would be safer outside of prison, where authorities could not enforce isolation and quarantines — a particular concern for someone who has on multiple occasions failed to abide by the terms of his incarceration, including most recently when he was released to an RRC — than in prison, where the MDC, through strict adherence to safety measures, has managed to keep its COVID-19 rate below that of the rest of New York City.

Finally, Defendant's disciplinary record at the MDC and his recent failure at a RCC indicate that he is not amenable to complying with any conditions of release.

## III. Conclusion

The Defendant's motion (dkt. no. 329) is denied because he has not demonstrated an "extraordinary and compelling" reason to modify his sentence to time served for a very serious crime. SO ORDERED.

Dated:    New York, NY
           April 14, 2020

                                            _____
                                            Loretta A. Preska
                                            Senior United States District Judge